RICK KLINGBEIL, PC
1826 NE Broadway
Portland, OR 97232
P: 503-490-6763
rick@klingbeil-law.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **JASON LEWIS SIMON**, an individual, | Case No. |
| Plaintiff, | **CLASS ACTION ALLEGATION COMPLAINT** |
| v. | **Money Damages and Injunctive Relief** |
| **THE BOUNTIFUL COMPANY**, fka Nature's Bounty Co., a foreign corporation; **NORDIC NATURALS, INC.,** a foreign corporation; **PFIZER, INC.** a foreign corporation; **ALACER CORP.**, a foreign corporation; **QUTEN RESEARCH INSTITUTE, LLC,** a foreign corporation; **BAYER HEALTHCARE, LLC,** a foreign corporation; **PHARMAVITE, LLC**, a foreign corporation; **CHURCH & DWIGHT CO., INC**., a foreign corporation, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**Page 1 -**    CLASS ACTION ALLEGATION COMPLAINT

Plaintiff Jason Lewis Simon individually and on behalf of the proposed Class described below alleges:

## I.    INTRODUCTION AND NATURE OF THE CASE

1.      This is a proposed consumer class action.

2.      Plaintiff individually and on behalf of all similarly situated persons within the state of Oregon currently seek monetary damages and injunctive relief based on Defendants' unlawful acts and material omissions.

3.      The claims concern Defendants' sales of certain vitamins, minerals, herbs, amino acids, spices, oils, and other supplements ("Dietary Supplements") to Oregon consumers throughout Oregon.

4.      The bottles, boxes, bags, packages, and containers ("Package") for each of the Dietary Supplements at issue ("Accused Products") violate Oregon and federal law and were objectively and materially misleading and deceptive to Plaintiff and Class Members.

## II.    THE PARTIES

**A.    Plaintiff**

5.      Plaintiff / proposed Class Representative Jason Lewis Simon ("Plaintiff" or "Simon") is a competent adult who at all material times was domiciled in Oregon.

6.      During the Class Period described below, Simon purchased Accused Products from various retails stores within Oregon.

7.      At the time of his purchases, Simon did not know or have reason to suspect that the information on the Packages for the Accused Products was false, deceptive, misleading, omitted material facts, or otherwise violated Oregon and federal law.

**Page 2 -**    CLASS ACTION ALLEGATION COMPLAINT

**B.      Proposed Class Members**

8.      The class of persons Plaintiff seeks to represent is defined as all persons who purchased one or more Accused Products within Oregon during the Class Period defined herein.

**C.    Defendants**

9.      **The Bountiful Company**, formerly known as Nature's Bounty Co., is a Delaware corporation with its headquarters in New York.  It manufactures, distributes, and sells dietary supplements under the brand names Nature's Bounty and Sundown.

10.      **Nordic Naturals, Inc.** is a Delaware corporation with its headquarters in California.  It manufactures, distributes, and sells dietary supplements under the brand name Nordic Naturals.

11.      **Pfizer, Inc.** is a Delaware corporation with its headquarters in New York.  It owns and manages **Alacer Corp**., a California corporation with its headquarters in California. Pfizer and Alacer Corp. manufacture, distribute, and sell dietary supplements under the brand name Emergen-C.

12.      **Quten Research Institute, LLC** is a New Jersey corporation with its headquarters in New Jersey.  It manufactures, distributes, and sells dietary supplements under the brand name Qunol.

13.      **Bayer HealthCare, LLC** is a Delaware corporation with its headquarters in New Jersey. It manufactures, distributes, and sells dietary supplements under the brand name Citracal.

14.      **Pharmavite, LLC** is a Delaware corporation with its headquarters in California. It manufactures, distributes, and sells dietary supplements under the brand name Nature Made.

**Page 3 -**      CLASS ACTION ALLEGATION COMPLAINT

15.     **Church & Dwight Co., Inc**. is a Delaware corporation with its headquarters in New Jersey.  It manufactures, distributes, and sells dietary supplements under the brand name VitaFusion.

### III.   JURISDICTION AND VENUE

**A.     Jurisdiction**

16.     This Court has subject matter jurisdiction based on diversity. Plaintiff is an Oregon citizen, by definition each member of the Class is an Oregon resident, and each Defendant is incorporated in states other than Oregon, each Defendant has its home office outside of Oregon, and the amount in controversy exceeds $75,000.

17.     This Court has personal jurisdiction over each Defendant because each conducts substantial business activities in Oregon and Multnomah County through marketing, retail and online sales, and the claims arise out of Defendants' contacts and activities in Oregon.

18.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2), the "Class Action Fairness Act." On information and belief, there are over 1,000 Class Members in the proposed Class, the amount in controversy exceeds $5,000,000, and by definition all Class members are citizens or residents of Oregon, and each Defendant is incorporated and headquartered in states other than Oregon.

**1.     Venue**

19.     Venue is proper in Oregon federal district court under 28 U.S.C. § 1391 because each Defendant does significant business in Oregon and all of the acts and omissions underlying the claims in this lawsuit occurred in Oregon.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

## IV.  DEFENDANTS' MISCONDUCT

**A.    Dietary Supplement and Food Packaging - Federal FDA and Oregon Requirements**

    **a.    Dietary Supplements are "Food" under FDA rules and Oregon law.**

20.    The United States Food and Drug Administration ("FDA") defines "food" to include Dietary Supplements. 21 U.S.C. 321 (ff)(3)(b)(ii) ("a dietary supplement shall be deemed to be a food within the meaning of this chapter.").

21.    The FDA's definition of a "dietary supplement" includes each of the Accused Products in this case.  21 U.S.C. 321(ff).

22.    ORS 616.205(10)(c) defines "food" to include Dietary Supplements.

23.    ORS 616.205(7)'s definition of a "dietary supplement" includes each of the Accused Products in this case.

    **b.    The Principal Display Panel shall bear a net declaration of contents.**

24.    The FDA defines the front-facing portion of food Packages as the "Principal Display Panel" ("PDP"):

> "The term *principal display panel* as it applies to food in package form and as used in this part, means the part of a label that is most likely to be displayed, presented, shown, or examined under customary conditions of display for retail sale." 21 CFR § 101.1. (Italics in original).

25.    ORS 616.205(18) defines the principal display using almost identical terms:

> "'Principal display panel' means that part of a label that is most likely to be displayed, presented, shown or examined under normal and customary conditions of display for retail sale."

26.    The FDA established minimum requirements for the contents of a PDP for Dietary Supplements. These include the requirement that the PDP "shall bear a declaration of the net quantity of contents." 21 CFR 101.105(a) and (c). See, also, 21 CFR 101.7, "[t]he

**Page 5 -**    CLASS ACTION ALLEGATION COMPLAINT

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

declaration shall appear as a distinct item on the principal display panel" and "shall accurately

reveal the quantity of food in the package."

27.    According to the FDA, the net quantity of contents:

"shall be expressed in the terms of weight, measure, numerical count, or a combination of numerical count and weight or measure." 21 CFR 101.105(a).

\*\*\*\*\*

"When the declaration of quantity of contents by numerical count does not give adequate information as to the quantity of food in the package, it shall be combined with such statement of weight, measure, or size of the individual units of the foods as will provide such information." 21 CFR 101.105(c).

28.     FDA reference documents provide further guidance:

Question: "What is the net quantity of contents statement for a dietary supplement?"

Answer: "The net quantity of contents statement for a dietary supplement is the statement that informs consumers of the amount of dietary supplement that is in the container or package." 21 CFR 101.105(a).

29.     FDA rules also require information contained on the PDPs be conspicuous and

easily legible boldface print or type in distinct contrast by typography, layout, color, embossing,

or molding. 21 CFR 101.7(h).

30.     The Oregon Attorney General has adopted the FDA's requirements for food and

Dietary Supplement labeling, giving them the force of law in Oregon:

"The federal rules governing food identity, \*\*\* and labeling of or in food adopted by the Food and Drug Administration of the U.S. Department of Health and Human Services, are hereby adopted as the rules governing this subject matter in Oregon. \*\*\* The adopted federal programs and standards are those set forth in the 2017 version, Title 21, Chapter 1, Parts 1, 7, 70, 73, 74, 81, 82, *100 through 111, 113 through 199* \*\*\* of the Code of Federal Regulations." (Italics added).  OAR 603-025-0190.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

31.     Oregon statutes, identical to the FDA rules, also require that the PDP provide "an accurate statement of the net quantity of the contents." ORS 616.250(1), (5)(a)(B), (6).

32.     Under ORS 616.265 "[a]n advertisement of a food shall be deemed to be false if it is false or misleading in any particular."

33.     ORS 616.270 further provides that when evaluating whether labeling or an advertisement is misleading, not only are explicit claims considered, but also the extent to which material facts are undisclosed.

34.     Oregon law also prohibits using small or inconspicuous text for information required to appear on a PDP. ORS 616.250(6) provides:

> A food shall be deemed to be misbranded:
>
> *****
>
> If any word, statement or other information required by or under authority of ORS 616.205 to 616.295 to appear on the label or labeling is not prominently placed thereon with such conspicuousness, as compared with other words, statements, designs or devices, in the labeling, and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

35.      Both federal FDA regulations and Oregon law require that the front-facing label on a Dietary Supplement (the PDP) contain a truthful statement to consumers of the net quantity of Dietary Supplement within the Package, and requires that any qualifying, limiting, or clarifying language be conspicuous and likely to be seen and read during a normal retail purchase.

**c.      Federal and Oregon Principal Display Panel requirements**

36.     Information on a Dietary Supplement's PDP that complies with federal and

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

Oregon law and regulations typically includes:

(a)     the *type* of Dietary Supplement, such as "Vitamin C" or "Calcium";

(b)     the *quantity* of the Dietary Supplement, typically in milligrams, micrograms, or international units ("MG", "mg", "mcg", or "IU");

(c)     the *number* of individual units of Dietary Supplement contained within the Package, typically expressed as "tablets," "capsules," "caplets," "softgels," "gummies," "soft chews," or similar terms ("Units"). (See Figure 1); and

(d)     if the serving size or dosage ("Serving Size") required to obtain the quantity of Dietary Supplement stated on the PDP requires *multiple Units*, then either:

    (i)     a statement indicating "per serving of X," "per X Units," or similar (See Figure 2); or

    (ii)    the quantity of Dietary Supplement contained within one Unit (see Figure 3); or

    (ii)    a statement of "per serving" combined with a declaration of how many servings are contained in the Package. (See Figure 4).

**Page 8 -**     CLASS ACTION ALLEGATION COMPLAINT

# Figure 1



Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

# Figure 2



Rick Klingbeil, PC
1826 NE Broadway
Portland, OR 97232
P: 503-473-8565
rick@klingbeil-law.com

# Figure 3




# Figure 4




Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

c.      **Each of the Principal Display Panels on the Accused Products violate federal and Oregon law.**

37.     Each of the Accused Products require a Serving Size of more than one Unit. The PDPs on the Accused Products do not provide a consumer the information necessary to determine the net quantity of contents in the Package. Instead, the PDPs mislead consumers and overstate the amount of Dietary Supplement in each Package by a factor equal to the Serving Size. The PDPs on each of the Accused Products violate FDA regulations and Oregon law.

38.     The Accused Products violate federal and Oregon law in one or more of the following ways:

(a)     The PDPs on each of the Accused Products listed in Table 1 show the total amount of Dietary Supplement *in a multi-Unit Serving Size* and list the *total number of individual Units* in the Package. (Figure 5).  The PDPs provide no indication that the stated quantity of Dietary Supplement is for two or more Units, and not for a single Unit. The PDPs are misleading because they overstate the net quantity of contents in each Package by a factor equal to the Serving Size.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com



Figure 5

(b)    The PDPs on each of the Accused Products listed in Table 2 show the total amount of Dietary Supplement *in a multi-unit Serving Size*, state "per serving," and list the *total number of individual Units* in the Package.  (Figure 6). The "per serving" statement is inadequate because it omits any indication of either the *number of Units in a serving* (i.e. "per serving of X Units") (Figure 2), the quantity of Dietary Supplement in one Unit (Figure 3), or the *number of servings* in the Package (i.e. "X servings", see Figure 4).  The PDPs are misleading because they overstate the net quantity of contents in each Package by a factor equal to the Serving Size.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

# Figure 6




39.    Disclosing the Serving Size or the number of servings in the Package through the

Supplement Facts panel on the back of the Package, and not on the PDP does not satisfy FDA

regulations or Oregon law. See, *Walters v. Vitamin Shoppe*, 3:14-cv-01173-PK, on appeal, 701

Fed.Appx. 667 (9th Cir. 2017) and *Williams v. Gerber Prods. Co*., 552 F.3d 934, 939–40 (9th

Cir. 2008). See, also, 21 CFR 101.7, 21 CFR 101.105; ORS 616.250(1), (5), (6).

40.    The "per serving" language does not bring the Accused Products in Table 2 into

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

compliance with federal or Oregon law.

41.    To the extent the "per serving" text on the Accused Products listed in Table 2 has

any legal effect, for each of the Accused Products designated with "***" in the seventh column,

the "per serving" text on the PDP is undersized, or otherwise inconspicuous because of color,

contrast, design, or placement and violates federal and Oregon law.

42.    Figure 6, above, and Figure 7, below, provide examples:

# Figure 7



**B.    Federal and Oregon law prohibit selling Misbranded Dietary Supplements**

43.    The Food, Drug, and Cosmetic Act, 21 USC Sec. 301 *et seq*.,  is a public welfare

statute that imposes "the highest standard of care on distributors." *Smith v. California,* 361 U.S.

147, 152, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). It was enacted to enable purchasers to make

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

intelligent choices, and, to that end, "[m]isbranding was one of the chief evils Congress sought to stop." *United States v. 45/194 Kg. Drums of Pure Vegetable Oil,* 961 F.2d 808, 812 (9th Cir. 1992).

44.     A food shall be deemed to be misbranded . . . [i]f . . . its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

45.     A Package of Dietary Supplement is misbranded if the container is misleading: "A food shall be deemed to be *misbranded* ... (d) ... If its container is so made, *** as to be misleading." 21 U.S.C. §343(d).  (Italics added).

46.     The FDA commentary section entitled "Labeling Requirements – Misbranding" states:

> "Section 502 of the Federal Food, Drug and Cosmetic Act (FFDCA) contains provisions on misbranding including those that relate to false or misleading labeling. A device's labeling misbrands the product if:
>
>> "Its labeling is false or misleading in any particular;
>>
>> "It is in package form and its label fails to contain *** *an accurate statement of the quantity of the contents* in terms of weight, measure, or numerical count;"
>>
>> "Any required wording is not prominently displayed as compared with other wording on the device, or is not clearly stated."
>>
>> (Emphasis added). (https://www.fda.gov/medical-devices/general-device-labeling-requirements/labeling-requirements-misbranding).

47.     Each of the Accused Products are misbranded under federal law and FDA rules.

48.     The misbranding provision prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food *** that is *** misbranded."  21 U.S.C. § 331(a)-(d) and (g).

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

49.     A misbranded product cannot be legally manufactured, advertised, distributed, or sold, and is therefore worthless and without value as a matter of law.

50.     Each of the Accused Products are also misbranded and unlawful to sell under Oregon law:

> **616.250 When food deemed misbranded; rules.** A food shall be deemed to be misbranded:
>
> (1)     If its labeling is false or misleading in any particular, or fails to conform to ORS 616.325.
>
> *****
>
> (5)     If in package form:
>
> (a)     Unless it bears a label containing:
>
> *****
>
> (B) An accurate statement of the net quantity of the contents in terms of weight, measure, volume or numerical count. *The statement shall be separately and accurately stated upon the principal display panel of the label.*  (Italics added).
>
> *****
>
> (6)     If any word, statement or other information required by or under authority of ORS 616.205 to 616.295 to appear on the label or labeling is not prominently placed thereon with such conspicuousness, as compared with other words, statements, designs or devices, in the labeling, and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

51.     The Accused Products violate ORS 616.325 (referenced in ORS 616.250, above), which provides:

> (1)     All labels of consumer commodities shall conform to such requirements for the declaration of net quantity of contents as the State Department of Agriculture by rule may prescribe.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

52.     Oregon's State Department of Agriculture prescribed the following rules:

**OAR 603-029-1004:**

\*\*\*

(3) Labels of all products shall show the following information on the principal display panel:

\*\*\*

(d)  An accurate statement of the net quantity of contents, as prescribed in section (8) of this rule;

\*\*\*

(8)(a)  The statement of net quantity of contents shall appear on the principal display panel of all containers to be sold at retail intact, in conspicuous and easily legible boldface print or type in distinct contrast to other matter on the container, and shall be declared in accordance with the provisions of this subsection.

(b)  The statement as it is shown on a label shall not be false or misleading and shall express an accurate statement of the quantity of contents of the container….

53.     The Accused Products are misbranded under Oregon law. ORS 615.250.

54.     Oregon law prohibits the "manufacture, sale or delivery, holding or offering for sale of any food that is \*\*\* misbranded." ORS 616.215.

55.     Because a misbranded product cannot be legally manufactured, distributed, or sold in Oregon, it is worthless and has no value as a matter of law.

**C.     Each Defendant offered for sale and sold Accused Products to Class Members within the Class Period.**

56.     During the Class Period each Defendant advertised and sold the Accused Products within its Oregon stores.

Page 19 -     CLASS ACTION ALLEGATION COMPLAINT

57.     Tables 1 through 7 list each Defendant and the Accused Products discovered to date with PDPs that misstate the amount of Dietary Supplement within the Package. The PDP for each product lists the number of Units in the Package and the quantity of Dietary Supplement in a *multi-Unit* Serving Size. None of the PDPs on any of the Accused Products indicate that the stated quantity of Dietary Supplement is for more than one Unit through the use of  "per serving of X," "per X Units," or similar clarifying language. The PDPs on each of the Accused Products in the Tables below violate Oregon and federal law and are misleading.

58.     The PDPs on many of the Accused Products provide an inadequate and confusing "per serving" statement.  The PDPs on each of these Accused Products violate Oregon and federal law and are misleading because they do not disclose the number of Units in a serving using, for example, "per serving of X Units," "per X Units," or similar verbiage.

59.     Plaintiff intends to amend this Complaint to add any additional deceptively labeled Dietary Supplements as they are discovered.

**Table 1 – The Bountiful Company – Accused Products**

| Ex. | Brand Name | Name & Ingredients | Units | Stated Supplement Amount per Unit | Actual Supplement Amount per Unit |
|---|---|---|---|---|---|
| 1. | Nature's Bounty | CLA | 50 | 1000 mg CLA | 500 mg CLA |
| 2. | Nature's Bounty | Apple Cider Vinegar | 200 | 480 mg ACV | 240 mg ACV |
| 3. | Nature's Bounty | C Gummies | 80 | 250 mg Vit. C | 125 mg Vit. C |
| 4. | Nature's Bounty | C, D, & Zinc Gummies | 70 | 250 mg Vit. C, 500 IU Vit. D3, 7.5 mg Zinc | 125 mg Vit. C, 250 IU Vit. D3, 3.75 mg Zinc |
| 5. | Nature's Bounty | Calcium with D3 - Softgels | 120 | 1200 mg Calcium, 1000 IU Vit. D3 | 600 mg Calcium, 500 IU Vit. D3 |
| 6. | Nature's Bounty | Cinnamon Plus Chromium | 60 | 2000 mg Cinnamon | 1000 mg Cinnamon |

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

| 7. | Nature's Bounty | Co Q-10 Gummies | 60 | 200 mg Co Q-10 | 100 mg Co Q-10 |
|----|----|----|----|----|----|
| 8. | Nature's Bounty | Cranberry | 60 | 25,200 mg Fruit Conc. | 12,600 mg Fruit Conc. |
| 9. | Nature's Bounty | Cranberry Gummies | 150 | 500 mg Cranberry | 100 mg Cranberry |
| 10. | Nature's Bounty | D3 Gummies | 90 | 2000 IU D3 | 1000 IU D3 |
| 11. | Nature's Bounty | Elderberry Gummies | 70 | 100 mg Elderberry | 50 mg Elderberry |
| 12. | Nature's Bounty | Elderberry Sambucus Softgels | 120 | 630 mg Elderberry | 210 mg Elderberry |
| 13. | Nature's Bounty | Fish Oil | 90 | 2400 mg Fish Oil, 1200 mg Omega-3 | 1200 mg Fish Oil, 600 mg Omega-3 |
| 14. | Nature's Bounty | Ginko Biloba | 200 | 60 mg Ginko | 30 mg Ginko |
| 15. | Nature's Bounty | Gorgeous Sleep Gummies | 60 | 5 mg Melatonin | 2.5 mg Melatonin |
| 16. | Nature's Bounty | Hair Skin & Nails - Biotin | 80 | 2500 mg Biotin | 1250 mg Biotin |
| 17. | Nature's Bounty | Hair Skin & Nails - Biotin Caplets | 60 | 3000 mcg Biotin | 1000 mcg Biotin |
| 18. | Nature's Bounty | Hair Skin & Nails - Biotin Gummies | 80 | 6000 mcg Biotin | 3000 mcg Biotin |
| 19. | Nature's Bounty | Hair Skin & Nails - Biotin Jellybeans | 80 | 6000 mcg Biotin | 3000 mcg Biotin |
| 20. | Nature's Bounty | Hair Skin & Nails - Biotin Softgels | 150 | 5000 mcg Biotin | 1667 mcg Biotin |
| 21. | Nature's Bounty | Hair Skin & Nails - Collagen Gummies | 80 | 100 mg Collagen | 50 mg Collagen |
| 22. | Nature's Bounty | Immune 24 Hour + | 50 | 1000 mg Ester-C | 500 mg Ester-C |
| 23. | Nature's Bounty | Mini Fish Oil | 90 | 1290 mg Oil, 900 mg Omega-3 | 645 mg Oil, 450 mg Omega-3 |
| 24. | Nature's Bounty | Probiotic | 60 | 4 billion live cultures | 2 billion live cultures |
| 25. | Nature's Bounty | Sleep Gummies | 60 | 3 mg Melatonin | 1.5 mg Melatonin |
| 26. | Nature's Bounty | Women's Multi Vit. - Gummies | 90 | 50 mg Collagen | 25 mg Collagen |
| 27. | Nature's Bounty | Women's MultiVit. - Collagen | 80 | 50 mg Collagen | 25 mg Collagen |
| 28. | Nature's Bounty | Zinc Gummies | 70 | 30 mg Zinc | 15 mg Zinc |
| 29. | Sundown | Complete Omega | 90 | 3000 mg Salmon Oil 1400 mg Omega FA | 1500 mg Salmon Oil 700 mg Omega FA |

**Page 21 -**    CLASS ACTION ALLEGATION COMPLAINT

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

| | | | | | |
|---|---|---|---|---|---|
| 30. | Sundown | B12 Gummies | 50 | 500 mcg B12 | 250 mg B12 |
| 31. | Sundown | Co Q-10 Gummies | 50 | 200 mg Co Q-10 | 100 mg Co Q-10 |
| 32. | Sundown | Cranberry Gummies | 75 | 500 mg Cranberry | 100 mg Cranberry |
| 33. | Sundown | Elderberry Gummies | 90 | 100 mg Elderberry | 50 mg Elderberry |
| 34. | Sundown | Melatonin Gummies | 60 | 5 mg Melatonin | 2.5 mg Melatonin |
| 35. | Sundown | Melatonin Gummies | 150 | 5 mg Melatonin | 2.5 mg Melatonin |
| 36. | Sundown | Vit. D3 Gummies | 90 | 2000 IU D3 | 1000 IU D3 |
| 37. | Sundown | Zinc Gummies | 90 | 30 mg Zinc | 15 mg Zinc |

**Table 2 – Nordic Naturals Inc. – Accused Products**

| Ex. | Brand Name | Name & Ingredients | Units | Stated Supplement Amount per Unit | Actual Supplement Amount per Unit |
|---|---|---|---|---|---|
| | Nordic Naturals | Omega-3 | 60 | 690 mg Omega-3 | 345 mg Omega-3 |
| | Nordic Naturals | Algae Omega | 60 | 715 mg Omega-3 | 357.5 mg Omega-3 |
| 2. | Nordic Naturals | Ultimate Omega 2x | 60 | 2150 mg Omega-3 | 1075 mg Omega-3 |
| 3. | Nordic Naturals | Ultimate Omega | 60 | 1280 mg Omega-3 | 640 mg Omega-3 |
| 4. | Nordic Naturals | Ultimate Omega + CoQ10 | 60 | 1280 mg Omega-3<br>100 mg CoQ10 | 640 mg Omega-3<br>50 mg CoQ10 |
| 5. | Nordic Naturals | Prenatal DHA | 90 | 830 mg Omega-3<br>400 IU D3 | 415 mg Omega-3<br>200 IU D3 |
| 6. | Nordic Naturals | Nordic Immune Daily Defense | 90 | 429 mg Elderberry Extract<br>1000 mg Vitamin C<br>2000 IU Vitamin D3<br>15 mg Zinc | 143 mg Elderberry Extract<br>334 mg Vitamin C<br>667 IU Vitamin D3<br>5 mg Zinc |

**Table 3 – Pfizer and Alacer Corp. – Accused Products**

| Ex. | Brand Name | Name & Ingredients | Units | Stated Supplement Amount per Unit | Actual Supplement Amount per Unit |
|---|---|---|---|---|---|
| 1. | Emergen-C | Immune Support 500 mg Vitamin C | 45 | 500 mg Vitamin C | 167 mg Vitamin C |
| 2. | Emergen-C | Immune Support 750 mg Vitamin C | 45 | 750 mg Vitamin C | 250 mg Vitamin C |
| 3. | Emergen-C | 1000 mg Vitamin C Chewable | 40 | 1000 mg Vitamin C | 500 mg Vitamin C |
| 4. | Emergen-C | Elderberry Immune + | 45 | 50 mg Elderberry juice concentrate | 18 mg Elderberry juice concentrate |

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

**Table 4 – Quten Research Institute, LLC – Accused Products**

| Ex. | Brand Name | Name & Ingredients | Units | Stated Supplement Amount per Unit | Actual Supplement Amount per Unit |
|---|---|---|---|---|---|
| **1.** | **Qunol** | **Extra Strength Turmeric, 1000 mg** | **30** | **1000 mg Turmeric** | **500 mg Turmeric** |
| 2. | Qunol | Extra Strength Turmeric, 1000 mg | 60 | 1000 mg Turmeric | 500 mg Turmeric |
| 3. | Qunol | Extra Strength Turmeric, 1000mg | 120 | 1000 mg Turmeric | 500 mg Turmeric |
| 4. | Qunol | Turmeric Curcumin with Black Pepper, 2250 mg Turmeric Extract with 95% Curcuminoids | 90 | 2250 mg Turmeric | 750 mg Turmeric |
| 5. | Qunol | CoQ10 UHA Gummies, 100mg | 60 | 100 mg CoQ10 | 50 mg CoQ10 |
| 6. | Qunol | CoQ10 | 60 | 100 mg CoQ10 | 50 mg CoQ10 |
| 7. | Qunol | Turmeric UHA Gummies, 500mg | 60 | 500 mg Turmeric | 250 mg Turmeric |
| 8. | Qunol | Omega-3 Mini Softgels, 1000 mg | 120 | 1000 mg Omega-3 | 500 mg Omega-3 |
| 9. | Qunol | Omega-3 Softgels, 2000 mg | 60 | 2000 mg Omega-3 | 1000 mg Omega-3 |

**Table 5 – Bayer Healthcare, LLC – Accused Products**

| Ex. | Brand Name | Name & Ingredients | Units | Stated Supplement Amount per Unit | Actual Supplement Amount per Unit |
|---|---|---|---|---|---|
| | Citracal | Calcium+D3 | 80 | 1200 mg Calcium<br>1000 IU Vitamin D3 | 600 mg Calcium<br>500 IU Vitamin D3 |
| 2. | Citracal | Calcium+D3 Slow Release 1200 | 80 | 1200 mg Calcium<br>1000 IU Vitamin D3 | 600 mg Calcium<br>500 IU Vitamin D3 |

**Table 6 – Pharmavite, LLC – Accused Products**

| Ex. | Brand Name | Name & Ingredients | Units | Stated Supplement Amount per Unit | Actual Supplement Amount per Unit |
|---|---|---|---|---|---|
| 1. | Nature Made | Calcium with D3 | 80 | 500 mg Calcium | 250 mg Calcium |
| 2. | Nature Made | CholestOff Complete | 120 | 900 mg Plant Sterols | 300 mg Plant Sterols |
| 3. | Nature Made | CholestOff Plus | 100 | 900 mg Plant Sterols | 450 mg Plant Sterols |
| 4. | Nature Made | D3 Gummies | 90 | 2000 IU D3 | 1000 IU D3 |
| 5. | Nature Made | D3 Gummies | 150 | 2000 IU D3 | 1000 IU D3 |

Rick Klingbeil, PC
1826 NE Broadway
PORTLAND, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

| 6. | Nature Made | Energy B12 Gummies | 80 | 1000 mcg B12 | 500 mcg B12 |
|---|---|---|---|---|---|
| 7. | Nature Made | Extra Strength D3 | 80 | 5000 IU D3 | 2500 IU D3 |
| 8. | Nature Made | Fish Oil | 60 | 2800 mg Fish Oil, 2000 mg Omega-3 | 1400 mg Fish Oil, 2000 mg Omega-3 |
| 9. | Nature Made | Fish Oil Minis | 60 | 1400 mg Fish Oil, 1000 mg Omega-3 | 700 mg Fish Oil, 500 mg Omega-3 |
| 10. | Nature Made | Iron w/ Vit. C | 60 | 18 mg Iron | 9 mg Iron |
| 11. | Nature Made | Magnesium Citrate | 60 | 250 mg Magnesium | 125 mg Magnesium |
| 12. | Nature Made | Magnesium Glycinate | 60 | 200 mg Mag G | 100 mg Mag G |
| 13. | Nature Made | Melatonin Gummies | 120 | 10 mg Melatonin | 5 mg Melatonin |
| 14. | Nature Made | Digestive Probiotics | 42 | 8 billion CFU | 4 billion CFU |
| 15. | Nature Made | Probiotics + B12 | 50 | 4 billion CFU | 2 billion CFU |
| 16. | Nature Made | Turmeric Curcumin Gummies | 60 | 250 mg Turmeric | 125 mg Turmeric |
| 17. | Nature Made | Vit. C Gummies | 80 | 250 mg Vit. C | 125 mg Vit. C |
|  |  |  | 150 | 250 mg Vit. C | 125 mg Vit. C |
| 18. | Nature Made | Zinc Gummies | 60 | 30 mg Zinc | 15 mg Zinc |

**Table 7 – Church & Dwight Co., Inc. – Accused Products**

| Ex. | Brand Name | Name & Ingredients | Units | Stated Supplement Amount per Unit | Actual Supplement Amount per Unit |
|---|---|---|---|---|---|
| 1. | VitaFusion | Fiber Well - Fit | 90 | 5 grams Fiber | 2.5 grams Fiber |
| 2. | VitaFusion | Fiber Well - Gummies | 90 | 5 grams Fiber | 2.5 grams Fiber |
| 3. | VitaFusion | Fiber Well - Weight Management | 90 | 5 g Fiber | 2.5 g Fiber |
| 4. | VitaFusion | Apple Cider Vinegar | 60 | 500 mg ACV | 250 mg ACV |
| 5. | VitaFusion | B12 Gummies | 90 | 3000 mcg B12 | 1500 mcg B12 |
| 6. | VitaFusion | Brain Food | 50 | 125 mg Ashwagandha, 100 mg Phosphatidylserine | 62.5 g Ashwagandha, 50 mg Phosphatidylserine |
| 7. | VitaFusion | Calcium | 100 | 500 mg Calcium | 250 mg Calcium |
| 8. | VitaFusion | Elderberry | 90 | 225 mg | 75 mg |
| 9. | VitaFusion | Fiber Well – Fit - Sugar Free | 90 | 4 grams Fiber | 2 grams Fiber |
| 10. | VitaFusion | Fiber Well – Gummies – Sugar Free | 90 | 5 grams Fiber | 2.5 grams Fiber |
| 11. | VitaFusion | Melatonin | 120 | 5 mg Melatonin | 2.5 mg Melatonin |
| 12. | VitaFusion | Melatonin | 100 | 10 mg Melatonin | 5 mg Melatonin |
| 13. | VitaFusion | Power Zinc | 90 | 15 mg Zinc | 5 mg Zinc |
| 14. | VitaFusion | PreNatal | 90 | 50 mg DHA | 25 mg DHA |
| 15. | VitaFusion | Probiotic | 70 | 5 billion CFU | 2.5 billion CFU |
| 16. | VitaFusion | Triple Immune Power | 60 | 10 mg Elderberry | 5 mg Elderberry |

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

60.     The PDPs on each of the Accused Products in the Tables above violate federal and Oregon law because they are deceptive and misleading, fail to provide an accurate statement of the net quantity of the contents in the Package, and overstate the net quantity of contents in the Package by a factor of two or more. 21 CFR 101.105(a) and (c); ORS 616.250(1), (5)(a)(B).

61.     The PDPs on each of the Accused Products renders them misbranded, and therefore unfit and illegal to sell under federal and Oregon law.

62.     Because misbranded products are illegal to sell, they are worthless. 21 U.S.C. §§ 331(a), 352; *Debernardis v. IQ Form., LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019); *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2021 WL 222776, at *16 (D.N.J. Jan. 22, 2021).

63.     Plaintiff and all Oregon purchasers of Accused Products within the Class Period purchased worthless and illegally sold products. Each suffered actual and ascertainable damages in the amount of their purchase price.

**D.    Accused Products**

   **Example product: Emergen-C - Immune Support - 500 mg Vitamin C**

64.     Figure 9 is representative of each of the Accused Products sold by Defendants. The net quantity of Dietary Supplement shown by the PDP on the bottle in Figure 9 is false and misleading.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

# Figure 9



65.    The PDP in for the Emergen-C Gummies falsely represents that the bottle holds 45 gummies that each contain 750 mgs of Vitamin C. The Supplement Facts panel on the reverse side of the bottle reveals that the 750 mg figure on the PDP is misleading.  That statement of quantity is based on a Serving Size of *three* gummies.

66.    The bottle actually contains 45 individual gummies that each contain 250 mg of Vitamin C. Three gummies must be consumed to obtain the 750 mg quantity shown on the PDP.

67.    The bottle contains only one-third the amount of Vitamin C stated on the PDP.  A consumer viewing this PDP would reasonably conclude that they were purchasing 45 gummies that each contain 750 mg of Vitamin C, for a total of 33,750 mg of Vitamin C.  Instead, they

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

receive 45 gummies that contain 250 mg of Vitamin C, for a total of 11,250 mg of Vitamin C.

68.    The PDP for the Emergen-C, similar to each of the Accused Products in this case, is misleading, deceptive, and violates Oregon and federal law.  Each Accused Product is misbranded because its PDP fails to accurately "bear a declaration of the net quantity of contents" in the Package and fails to "inform[ ] consumers of the amount of dietary supplement that is in the container or package." 21 CFR 101.105(a) and (c); ORS 616.250(1), (5)(a)(B).

**E.    Accused Products - Multi-Unit Servings with inadequate "Per Serving" language**

    **a.    Example product: Nature's Bounty - Hair Skin & Nails Gummies – 100 mg Collagen**

        **a.    Misleading PDP – quantity based on multiple Unit Serving Size.**

69.    Figure 13 is representative of each of the Accused Products sold by Defendants with misleading "per serving" language.

## Figure 13

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

70.     The PDP in Figure 13 is deceptive and violates Oregon and federal law because it fails to "bear a declaration of the net quantity of contents" in the Package and the PDP fails to "inform[ ] consumers of the amount of dietary supplement that is in the container or package." 21 CFR 101.105(a) and (c); ORS 616.250(1), (5)(a)(B).

71.     The PDP fails to state the number of servings within the Package, the number of Units in a "serving," or the Serving Size.  It is impossible to study the PDP and accurately determine the net quantity of Dietary Supplement within the Package.

72.     Absent additional disclosure, a reasonable consumer is led to believe that the bottle contains 80 gummies containing 100 mg of collagen for a total of 8,000 mg of collagen.

73.     If the PDP disclosed that the stated quantity was "per two gummies," or "per serving size of two gummies," or that the Package "contains 40 servings" then a consumer could readily determine that the Package provided (100 milligrams per serving / 2 gummies per serving) * 80 gummies = 4,000 mg of collagen.

74.     The PDP for the Nature's Bounty - Hair Skin & Nails, as with each of the Accused Products in this case is misleading, deceptive, and violates Oregon and federal law. Each Accused Product is misbranded because its PDP fails to accurately "bear a declaration of the net quantity of contents" in the Package and fails to "inform[ ] consumers of the amount of dietary supplement that is in the container or package." 21 CFR 101.105(a) and (c); ORS 616.250(1), (5)(a)(B).

## F.     All Misbranded Products

### a.     The PDPs in each of the Accused Products misled Plaintiff and Class Members.

75.     The PDPs for each of the Accused Products fail to disclose that the stated amount

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

of Dietary Supplement is intended to be "per serving" of more than one Unit, or "per X Units." The PDPs also fail to disclose the total number of servings in the Package.

76.     The PDPs for each Accused Product fail to "bear a declaration of the net quantity of contents," fail to provide "an accurate declaration of the quantity of contents," fail to "inform[ ] consumers of the amount of dietary supplement that is in the container or package," or "express an accurate statement of the quantity of contents of the container" as required under Oregon and federal law. 21 CFR 101.105(a) and (c); ORS 616.250(1), (5)(a)(B).

77.     The PDP for each Accused Product is false and misleading.

78.     The Package and PDP for each Accused Product materially misrepresents the quantity and characteristics of the contents of each of the Accused Products, creating consumer confusion and misleading consumers into believing they were receiving significantly more Dietary Supplement than actually exists in the Packages.

79.     In retail stores, Dietary Supplements, including the Accused Products, are oriented or "faced" so that the PDP of each Package faces the consumer.

80.     Retailers also group the same or similar types of Dietary Supplements near each other on its shelves.

81.     This is done in part to encourage consumers to use the information on the PDPs to compare quantities, prices, and unit prices of Dietary Supplements.

82.     When placed adjacent to Dietary Supplements with accurate PDPs and Price Labels, the Accused Products mislead consumers, overstate the quantity - and therefore value - of the Accused Product, and thwart efforts to effectively comparison shop.

83.     At all times during the Class Period, Defendants knew or should have known, or

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

possessed inquiry notice that the PDPs on the Accused Products it sold to Oregon residents violated Oregon and federal law.

84.     Defendants knew or should have known that the PDPs on the Accused Products created a substantial likelihood of misleading consumers regarding the total amount of Dietary Supplement per Unit, and total amount of Dietary Supplement within the Package.

## V.     INDIVIDUAL ALLEGATIONS

**A.     Plaintiff Simon purchased Accused Products.**

85.     Plaintiff has at various times purchased Accused Products from each Defendant within Oregon. These have included, but are not limited to the following:

    a.   Nature's Bounty, "Immune 24 Hour +", 1000 mg Ester-C, 50 softgels;

    b.   Sundown "Complete Omega", 3000 mg, 1400 mg total Omega, 90 softgels;

    c.   Nordic Naturals, "Nordic Immune Daily Defense", 429 mg Elderberry extract, 1000 mg Vitamin C, 2000 IU Vitamin D3, 15 mg Zinc, 90 softgels;

    d.   Emergen-C, "Elderberry Immune+", 50 mg Elderberry Juice Concentrate, 45 ct.;

    e.   Qunol, "Extra Strength Turmeric", 1000 mg Turmeric, 30 capsules;

    f.   Citracal "Calcium +D3, Slow Release 1200", 1200 mg Calcium, 1000 IU Vitamin D3, 80 tablets;

    g.   Nature Made, "Probiotics + B12", 4 billion CFU, 50 ct.;

    h.   VitaFusion, "Fiber Well – Weight Management", 5g fiber, 90 ct.

86.     At the time of his purchases and for a significant time thereafter, Plaintiff did not know, nor did he have reason to know or suspect that the labeling on Packages of the Accused

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

Products was inaccurate, deceptive, or misleading in any way.

87.     After discovering the inaccurate, deceptive, or misleading PDPs on the Accused

Products, Plaintiff discontinued purchasing those Dietary Supplements. Plaintiff would continue

to purchase these products if they were accurately and honestly labeled, and if the PDPs

provided an accurate statement of amount of contents within the Package.

88.     Plaintiff would not have purchased any of the Accused Products if he had known

the PDPs misrepresented the quantity of Dietary Supplement within the Package.

## VI.   CLASS ALLEGATIONS

**A.     Class definition**

89.     Plaintiff brings this case individually and on behalf of all similarly situated Class

Members who purchased one or more Accused Products in Oregon within the Class Period, or

members of any class, subclass, or issue class that the Court may determine appropriate for

class certification and treatment.

90.     The Class Period is defined as the period between April 8, 2023 until the date of

trial in this case.

91.     The statute of limitations and Class Period in this case are subject to Oregon's

discovery rule.

92.     The classes of persons Plaintiff seeks to represent are defined as: all persons who

purchased one or more Accused Products in Oregon within the Class Period.

93.     Excluded are: (a) Defendants, persons, firms, trusts, corporations, officers,

directors, or other individuals or entities in which any Defendant has a controlling interest or

which is related to or affiliated with any Defendant, and any current employees of any

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

Defendant; (b) all persons who make a timely election to be excluded from the proposed Class;

(c) the judge(s) to whom this case is assigned and any immediate family members thereof; and

(d) the legal representatives, heirs, successors-in-interest or assigns of any excluded party.

**B.      The claims are appropriate for class-wide certification in Oregon.**

94.      Plaintiff's claims are appropriate for class-wide certification and treatment within

Oregon. As Class Representative Plaintiff can prove the elements of his claims on a class-wide

basis using the same evidence as would be used to prove those elements in individual actions

alleging the same claims.

95.      Defendants' misrepresentations and deceptions were through explicit

misrepresentations and/or omissions of material fact contained on the PDPs of the Accused

Products, and/or representations on Defendants' website related to the Accused Products.

96.      Through their purchases each Class Member was exposed to the PDPs on the

Accused Products at issue.

97.      The misrepresentations, omissions, and non-complying nature of the PDPs on the

Accused Products were unknown to Plaintiff and Class Members at the time of their purchases.

98.      The facts withheld and/or omitted by Defendants are material because a

reasonable consumer would have considered them important in deciding whether to purchase a

Dietary Supplement. The claims are therefore appropriate for class wide determination under

*Affiliated Ute Citizens of Utah v. U.S.,* 406 U.S. 128 at 153–54 (1972).

**i.      Numerosity**

99.      Members of the Class are so numerous that joinder of all members individually

into one action is impractical. On information and belief, there are substantially more than 5,000

**Page 32 -**     CLASS ACTION ALLEGATION COMPLAINT

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

Class Members.

ii.    **Commonality and Predominance**

100.    Common questions of law and fact are shared by Plaintiff and Class Members that predominate over any individual issues.

101.    Common issues of law and fact include:

a.    Did Defendant know or should it have known that the PDPs on Accused Products sold within its Oregon stores during the Class Period were misleading?

b.    Did Defendant know or should it have known that the PDPs on Accused Products sold within its Oregon stores violated federal FDA requirements and Oregon law?

c.    Did Defendant represent that the goods it sold had characteristics, ingredients, *** quantities, or qualities that they did not have in violation of Oregon's Unlawful Trade Practices Act ("UTPA"), ORS 646.608(1)(e)?

d.    Did Defendant make a false or misleading representation of fact concerning the offering price of, or the cost for goods in violation of ORS 646.608(1)(s)?

e.    Did Defendant engage in unfair or deceptive conduct in trade or commerce in violation of ORS 646.608(1)(u)?

f.    Were Defendant's violations of the UTPA made knowingly or recklessly?

g.    Did Defendants make changes or modifications to their labels before the

**Page 33 -**    CLASS ACTION ALLEGATION COMPLAINT

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

beginning of the Class Period showing recognition that the PDPs
contained inaccurate statements?

h.    Did Plaintiff and Class Members sustain an ascertainable loss of money or
property because of Defendant's misconduct?

i.    What statute of limitations applies to the UTPA claims?

j.    Does the discovery rule apply to the UTPA claims?

k.    Does Defendant's misconduct support statutory damages of $200 per each
sale of Accused Product in violation of the UTPA?

l.    What is the proper measure of damages, costs, and attorney fees under the
UTPA?

m.    Are exemplary or punitive damages appropriate to address Defendant's
repeated misconduct and knowing or reckless violations of Oregon and
federal law?

n.    Does Defendant's conduct constitute intentional misrepresentation?

o.    Does the omission of information which Defendant had a duty under law
to disclose on the PDPs for the Accused Products support a determination
of class-wide reliance under *Affiliated Ute Citizens of Utah v. U.S.,* 406
U.S. 128 (1972)?

p.    What is the appropriate measure of damages for the intentional
misrepresentation claim?

q.    What statute of limitations applies to the intentional misrepresentation
claim?

**Page 34 -**    CLASS ACTION ALLEGATION COMPLAINT

r.  Was Defendant unjustly enriched by its misconduct in a way that caused

harm and is actionable under law?

s.  What is the statute of limitation for the unjust enrichment claim?

t.  What is the appropriate measure of damages for the unjust enrichment

claim?

u.  Is the Class entitled to equitable relief?

v.  What equitable relief is appropriate?

w.  What is the proper measure of attorney fees and costs?

### iii.    Typicality

102.    Each of Plaintiff's claims are typical of the claims of the Class he seeks to
represent.

103.    Each claim arises from the same type events, practices, and course of misconduct
by Defendants — the labeling, marketing, and sales of Accused Products in its Oregon stores.
Standardized misrepresentations through affirmative statements and/or omission of material
facts were made to each Class Member through the PDPs on each Package of Accused Product.

104.    Defendant's misrepresentations or omissions on the PDPs, "the part of a label that
is most likely to be displayed, presented, shown, or examined under customary conditions of
display for retail sale," and its violations of relevant Oregon and federal law were so all-
encompassing and material that each Class Member is deemed to have relied upon them.

### iv.    Plaintiff's Qualification to Serve as Class Representative

105.    Plaintiff's claims are appropriate for class-wide certification and treatment. As
Class Representative, Plaintiff can prove the elements of his claims on a class-wide basis using

**Page 35 -**    CLASS ACTION ALLEGATION COMPLAINT

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

the same evidence as would be used to prove those elements in individual actions alleging the same claims.

106.    Defendants' unlawful conduct was through explicit misrepresentation or omission of material and required facts and disclosures on the PDP, the falsity and/or absence of which were unknown to Plaintiff and Class Members, and which Defendants had a duty to disclose under 21 CFR 101.105 and Oregon law.  The claims are therefore appropriate for class-wide determination under *Affiliated Ute Citizens of Utah v. U.S.,* 406 U.S. 128 at 153–54 (1972).

107.    Plaintiff  is willing and prepared to serve the Court as representative for the Class, including all of the required material obligations and duties. Plaintiff will fairly and adequately represent and protect the interests of the Class and has no interests adverse to or which directly or irrevocably conflict with the other members of the Class. Plaintiff's self-interests are co-extensive with, and not antagonistic to the interests of the absent Class Members.

**v.    Adequacy of Class Counsel**

108.    Plaintiff has engaged the services of the law firm of Rick Klingbeil, PC, from Portland, Oregon ("RKPC").

109.    Lead attorney Rick Klingbeil has 30 years of experience in litigation, complex litigation, and class action cases. RKPC will protect the rights of and otherwise effectively represent the named Class Representative and absent Class Members. RKPC was one of the firms representing the Class Representatives and Class Members in the successful resolution of the *Silva v. Rite Aid* involving almost identical claims and issues. RKPC was also one of the firms who represented Class Representatives and Class Members in *Walters v. Vitamin Shoppe*, 3:14-cv-01173-JR; Ninth Circuit Court of Appeals No. 15-35592 (701 Fed.Appx. 667 (9th Cir.

**Page 36 -**    CLASS ACTION ALLEGATION COMPLAINT

2017)).

110.    On appeal before the Ninth Circuit Court of Appeals, RKPC and co-counsel successfully overturned the trial court's dismissal of the *Walters* case, and then successfully resolved the case through settlement.

111.    RKPC and Rick Klingbeil have also litigated other class action and mass tort cases including *Mitchell v. Chicago Pneumatic,* 3:94-cv-01230-RE; *Shea v. Chicago Pneumatic Tool Co.*, 164 Or App 198 (1999) *rev den*, 330 Or 252 (2000); *Hathaway v. B. & J. Property Investments, Inc.*, Marion County, Oregon, Case No. 13C14321; *Dobson v. Arco*, Mult. Co. #05-04969 (2005)); *In Re Google Streetview Litigation,* 5:10-md-02184-JW, (USDC ND Cal.) (participated in motion drafting, matters related to MDL certification, preservation of evidence issues, and other aspects of litigation); *Brunelle et al. v. My Pillow, Inc,* 3:16-cv-02007-YY; *Anderson et al. v. Lane Electric Cooperative, Inc. et al.,* Lane Cty. No. 21CV21063, (mass tort based on 2020 Oregon wildfires); *Arian v. Lane Electric Cooperative, Inc., et al.*, Lane Cty. No. 22CV30162 (mass tort based on 2020 Oregon wildfires); *Conner v. Lane Electric Co-op et al.,* Lane Cty. No. 21CV21063 (mass tort based on 2020 Oregon wildfires).  RKPC and Rick Klingbeil have regularly handled litigation involving ORS §646.608 and similar consumer protection statutes in other states.

**vi.    Superiority**

112.    A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy because, without limitation: joinder of all parties is impracticable; the operative facts relating to Plaintiff Members are the same; the damages suffered by each Class Member are relatively small; the expense and burden of individual

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

litigation makes it inefficient and ineffective for Class Members to individually redress the wrongs done to them; and proceeding as a class action will resolve thousands of claims in a manner that is fair to Defendants and Class Members. There will be no difficulty in the management of this case as a class action.

113.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. Defendants have acted on grounds that apply generally to the Class making relief appropriate to the Class as a whole.

**vii.    Manageability - Notice**

114.    The Class Members purchased Accused Products in Oregon.

115.    Class Members may be notified of the pendency of this action by several means, including direct contact through email or U.S. mail, posted notice at retail stores that sell Accused Products, through Defendants' marketing material, on their websites and social media related to their businesses, and through contact information collected by Defendants through online contact, or membership or rewards programs.

116.    If deemed necessary or appropriate by the Court, notice to Class Members may be provided or supplemented through published notice within the state of Oregon.

**viii.    Manageability – Claim Verification**

117.    Individuals may prove their claims through receipts, product Packages, debit or credit card transaction records, production of a paper receipt from purchases, or sworn statement.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

## VII.   CLASS CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (ORS §646.608 - Unlawful Trade Practices Act)

118.    On behalf of himself and all Class Members, Plaintiff realleges each of the preceding paragraphs in sections I. though VI., and further alleges:

119.    By engaging in the misconduct and practices described above, Defendants violated and continue to violate the Oregon Unlawful Trade Practices Act, ORS §646.608 in one or more of the following ways:

   a.    represented that goods have characteristics, ingredients, quantities, or qualities that they do not have, in violation of ORS §646.608(1)(e);

   b.    made false or misleading representations of fact concerning the offering price of, or the person's cost for goods, in violation of ORS §646.608(1)(s);

   c.    failed to disclose any known material defect or material nonconformity concurrent with delivery of goods, in violation of ORS §646.608(1)(t);

   d.    engaged in unfair or deceptive conduct in trade or commerce proscribed by rules established and adopted by the Oregon Attorney General, in violation of ORS §646.608(1)(u).

   The Oregon Attorney General has adopted the FDA's requirements for food and supplement labeling and misbranding applicable to Defendants' misconduct.  OAR 603-025-0190 states:

   "rules governing food identity, *** and labeling of or in food adopted by the Food and Drug Administration of the

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

U.S. Department of Health and Human Services, are hereby adopted as the rules governing this subject matter in Oregon. *** The adopted federal programs and standards are those set forth in the 2015 version, Title 21, Chapter 1, Parts 1, 7, 70, 73, 74, 81, 82 and 100 through 199, of the Code of Federal Regulations."

Defendants violated the labeling requirements set forth in 21 CFR Ch. 1, Part 101.105(1) because they offered for sale and sold Dietary Supplements whose PDPs did not contain an accurate statement of the net quantity of Dietary Supplement within the Package.  Violation of 21 CFR Ch. 1, Part 101.105(1) constitutes an unfair or deceptive conduct in trade or commerce proscribed by rules established by the Oregon Attorney General, in violation of ORS §646.608(1)(u).

120.    Defendants' violations of the UTPA within the Class Period were the result of a reckless or knowing use or employment of a method, act, or practice declared unlawful by ORS §646.608(1)(e), (s), or (u).

121.    Plaintiff and Class Members have sustained an ascertainable loss of money or property as a result of Defendants' violations and misconduct.

122.    Plaintiff and Class Members are entitled to statutory damages of $200 per violation pursuant to ORS 646.638(8)(a).

123.    Plaintiff and Class Members are entitled to prejudgment interest on any damages awarded.

124.    Plaintiff and Class Members seek attorney fees and costs incurred pursuant to ORS 646.638(3).

**Page 40 -**    CLASS ACTION ALLEGATION COMPLAINT

**SECOND CLAIM FOR RELIEF**

**(Intentional Misrepresentation - Oregon Law)**

125.    On behalf of himself and Class Members, Plaintiff realleges each of the preceding paragraphs in Sections I. through VI., and further alleges:

126.    The representations and/or omissions made by the PDPs on each Accused Product sold by Defendants during the Class Period relating to: (1) the quantity of Dietary Supplement in each Unit in the Package, and/or (2) the total quantity of the Dietary Supplement within the Package, were false and material.

127.    The PDP on each Accused Product: (1) failed to disclose that the stated quantity of Dietary Supplement was the amount "per serving of X units," "per x units," or similar, and not a "per Unit" measure; (2) failed to accurately represent the amount of Dietary Supplement per each Unit on the PDP; and/or (3) failed to accurately state total quantity of Dietary Supplement within the Package.

128.    Defendants further misrepresented the amount of Dietary Supplement in several Accused Products through false and misleading text and graphics contained on their websites.

129.    Defendants knew or reasonably should have known that these misrepresentations and/or omissions caused the PDPs on the Accused Products to be false and misleading to a reasonable consumer.

130.    Defendants' misrepresentations and/or omissions were material because: (1) they concern facts and information required to be accurately presented on the PDPs under Oregon and federal law; (2) they relate to the quantity and characteristics of the Dietary Supplement in the Package; (3) the information forms the basis for comparison shopping by potential

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

purchasers; (4) the information relates directly to the value of the Package of Dietary Supplement; and (5) the misleading Packages and PDPs create a risk that a purchaser will consume less of the Dietary Supplement than intended or prescribed.

131.    The misrepresentations or omissions were made with the intent that Plaintiff and Class Members rely upon them when purchasing the Accused Products, or, alternatively, with the intent that Plaintiff and Class Members do not learn of the material terms and information omitted from the PDPs which, through their absence, caused the representations to be false or misleading.

132.    Plaintiff and Class Members did not know of the falsity created by the misrepresentations and did not know or have reason to know of the facts omitted from the PDPs, and therefore are deemed to have justifiably relied upon the false representations or omissions when reviewing the PDPs and purchasing the Accused Products.

133.    Plaintiff and Class Members had a right to rely upon the misrepresentations or the misrepresentations created by the omissions found on the PDPs of each Accused Product.

134.    Plaintiff and Class Members were damaged and suffered an ascertainable loss of money or property because of the misrepresentations and/or omissions when they purchased the Accused Products in reliance on the PDPs, Price Labels, and website representations, and received substantially less Dietary Supplement than represented by the PDPs.

135.    Plaintiff and Class Members seek damages equal to the amount paid for each Accused Product, or alternatively, the difference between the amount paid and the actual value of the each Accused Product.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR 97232
P: 503-473-8565
rick@klingbeil-law.com

### THIRD CLAIM FOR RELIEF

### (Unjust Enrichment)

136.    On behalf of himself and the members of the Class, Plaintiff realleges each of the paragraphs in Sections I. through VI. above, and further alleges:

137.    Defendants have been unjustly enriched as a result of the above-described conduct.

138.    Specifically, Defendants have provided Plaintiff and Class Members with half or less than half of the quantity of Dietary Supplement that is represented on the PDP of each Accused Products and through the Defendants' websites.

139.    Defendants have received a benefit in the form of payment for Accused Products that contained half or less than half of the ingredients shown on the PDP.  Defendants retained these payments.

140.    Defendants were unjustly enriched in an amount equal to the amount paid for each Accused Product, or alternatively, the difference between the amount paid and the actual value of the each Accused Product.

141.    Retention of these amounts received by Defendants would be unjust and inequitable.

142.    Defendants' unjust enrichment came at the expense of Plaintiff and Class Members.

143.    Plaintiff and Class Members seek restitution of the amount paid for each Accused Product, or alternatively, the difference between the amount paid and the actual value of the each Accused Product.

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

## FOURTH CLAIM FOR RELIEF

### (Injunction / Equitable Relief)

144.    On behalf of himself and the members of the Class, Plaintiff realleges each of the paragraphs above, and further alleges:

145.    Plaintiff seeks an Order providing injunctive relief to require Defendants to cease the production, distribution, and sale of mislabeled dietary supplements and to take corrective actions to ensure future compliance with the FDA and Oregon laws and regulations.

### VIII.   REQUEST FOR RELIEF

Plaintiff seeks the following relief for himself and all Class Members:

**A.    Case Management**

An Order from this Court:

1.    Certifying this action as a class action as set forth above, or as subclasses, or an issue class as otherwise deemed appropriate by the Court pursuant to a Motion to Certify Class Action to be filed by Plaintiff;

2.    Appointing Plaintiff Jason Lewis Simon as Class Representative;

3.    Approving the law firm of Rick Klingbeil, P.C. and attorney Rick Klingbeil as class counsel for the Class, or any subclass or issue class.

4.    Granting a trial by jury for all issues so triable.

**B.    Monetary Damages / Restitution**

Plaintiff and the Class seek the following monetary damages and restitution:

1.    **First Claim for Relief** -  ORS §646.608 - Unlawful Trade Practices Act

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

    a.       Statutory damages in the amount of $200 for each sale of an Accused

               Product;

    b.       Prejudgment interest;

    c.       Attorney fees;

    d.       Costs and disbursements incurred in bringing this claim.

2.     **Second Claim for Relief** – Intentional Misrepresentation

    a.       The amount paid for each Accused Product, or alternatively, the difference

               between the amount paid and the actual value of the each Accused

               Product;

    b.       Prejudgment interest;

    c.       Costs and disbursements incurred in bringing this claim.

3.     **Third Claim for Relief** – Unjust Enrichment

    a.       Restitution in the amount paid for each Accused Product, or alternatively,

               the difference between the amount paid and the actual value of the each

               Accused Product;

    b.       Prejudgment interest;

    c.       Costs and disbursements incurred in bringing this claim.

**C.**    **Injunctive / Equitable Relief**

1.     **Fourth Claim for Relief** – Injunctive relief

    a.       An order preliminarily and permanently enjoining Defendants from

               producing, distributing, and selling mislabeled dietary supplements;

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com

b.      An order requiring Defendant to take all necessary corrective actions to comply with the FDA and Oregon laws and regulations related to the PDPs on dietary supplements sold in Oregon;

c.      Attorney fees;

d.      Costs and disbursements incurred in bringing this claim.

**Dated:**  April 8, 2024.

/s/ Rick Klingbeil

_____
Rick Klingbeil
OSB #933326

Rick Klingbeil, PC
1826 NE Broadway
Portland, OR  97232
P: 503-473-8565
rick@klingbeil-law.com